FILED BY_____ D.C.

MAY 29 2026

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

# UNITED STATES DISTRICT COURT

For The
Southern District Of Florida
Palm Beach Division

| | | |
|---|---|---|
| Petri Carmen, | ) | Case No.:_____ |
| Plaintiff | ) | |
| | ) | |
| -v- | ) | |
| | ) | JURY TRIAL DEMANDED |
| The School District of Palm Beach County, | ) | |
| Defendant | ) | |
| | ) | |
| _____ | ) | |

**COMPLAINT FOR DAMAGES, INJUNCTIVE, AND DECLARATORY RELIEF**

Plaintiff, Petri Carmen ("Plaintiff") files this Complaint against Defendant, The School District of Palm Beach County ("Defendant" or "the District"), and alleges as follows:

**INTRODUCTION**

1. This is an action for declaratory relief, injunctive relief, and damages to redress the unlawful, discriminatory, and retaliatory employment practices of Defendant.

2. Defendant interfered with Plaintiff's rights under the Family and Medical Leave Act ("FMLA"), retaliated against him for exercising those rights, and discriminated and retaliated against him on the basis of his disability in violation of the Americans with Disabilities Act ("ADA") and the Florida Civil Rights Act ("FCRA").

3. Defendant's actions were willful, malicious, and undertaken with reckless indifference to Plaintiff's federally and state-protected rights. Defendant terminated Plaintiff based on a knowingly false and pretextual reason after Plaintiff followed all of Defendant's instructions to return to work from approved medical leave.

**JURISDICTION AND VENUE**

4. This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 (federal question), the Family and Medical Leave Act, 29 U.S.C. § 2601-2654, the Americans with Disabilities Act, 42 U.S.C. § 12101-12213, and Title VII of the Civil Rights Act of 1964.

5. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, as they arise from the same common nucleus of operative facts as the federal claims and form part of the same case or controversy.

6. Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. § 1391(b) because Defendant resides in Palm Beach County, Florida, and a substantial part of the events and omissions giving rise to these claims occurred in Palm Beach County, Florida.

7. All conditions precedent to this action have been met. Plaintiff exhausted his administrative remedies by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). The EEOC issued by email two identical Notice(s) of Right to Sue within 90 days, which were received by Plaintiff on both March 3 and March 4, 2026. This action is timely filed within ninety (90) days of said receipt.

**PARTIES**

8. Plaintiff, Petri Carmen, is a citizen of the United States and a resident of Palm Beach County, Florida. At all times material hereto, Plaintiff was employed by Defendant as a Driver School Bus I and was an "eligible employee" under the FMLA and a "qualified individual with a disability" under the ADA.

9. Defendant, The School District of Palm Beach County, is a public school district and a political subdivision of the State of Florida. At all times material hereto, Defendant

was an "employer" as defined by the FMLA, ADA, and FCRA, conducting business within Palm Beach County, Florida.

## FACTUAL ALLEGATIONS

10. Plaintiff began his employment with Defendant in the summer of 2022 as a Driver School Bus I. He worked as an employee of Defendant for over 1,250 hours in the 12 months prior to taking his approved FMLA leave.

11. From the start of his employment until the events described herein, Plaintiff maintained an exemplary work record, with no accidents, no days off work, no instances of tardiness, and no disciplinary issues.

12. On October 30, 2023, Defendant dispatched Plaintiff to a wrong destination address. The previous persons doing routes had been replaced by a severely deficient computer program which had numerous newspaper articles written about the persistent unaddressed issue. This negligent assignment forced Plaintiff to navigate an extreme right-hand turn onto a dangerously narrow street, which was not the correct, wide avenue on the proper route.

13. This maneuver, necessitated by Defendant's negligence, caused the rear-left portion of the school bus to swing and impact the right side of a high SUV, which had a young child as a passenger. Defendant, the 10th largest school district in the country, negligently never provided practical training for drivers to "see" the extent of "rear swing" like other school districts do. Additionally, Defendant's newer "rural" school buses have dangerously higher bumpers than their previous "city-style" "car-level" bus bumpers. This poses a severe threat of decapitation to car traffic in the county; something that would have tragically happened to the young child if she had been in a car instead of the higher SUV.

14. On October 31, 2023, Plaintiff engaged in protected activity by reporting a safety concern to Defendant. In his written statement about the accident, Plaintiff wrote, "Wrong routes increase the risk and probability of accidents to all us drivers."

15. As a direct and proximate result of the trauma from this accident, Plaintiff began to suffer from severe psychological distress.

16. On November 9, 2023, Plaintiff was formally diagnosed with Post-Traumatic Stress Disorder (PTSD), a serious disability under the ADA and FMLA Act of 1993, by MD Psychiatrist Mouvielle Caro. Plaintiff's symptoms included, but were not limited to, insomnia, nightmares, hypervigilance, excessive arousal, intrusive distressing thoughts, and dissociative thoughts, which severely affected his quality of life and prevented him from working. He began ongoing psychiatric treatment.

17. On November 10, 2023, Plaintiff acted diligently by submitting his formal diagnosis letter to Defendant and requesting to be excused from work as a reasonable accommodation for his medical condition.

18. On that same day, November 10, 2023, instead of engaging in the required interactive process to accommodate Plaintiff's disability, Defendant retaliated against him. With a signature timestamp of 13:49 EST, Defendant mandated Plaintiff's participation in a Mandatory Employee Assistance Program (EAP) and required him to waive his HIPAA rights as a condition of continued employment.

19. This "forced medical treatment" through an EAP psychologist making extra money outside her sex-therapy specialty, was unnecessary, harmful, and interfered with the ongoing treatment Plaintiff was receiving from his own qualified MD psychiatrist.

20. On January 8, 2024, Plaintiff's treating psychiatrist certified his need for leave under the FMLA, with a stated incapacity period lasting through February 15, 2024.

21. On January 25, 2024, Defendant issued a "Designation Notice" under the FMLA, formally approving Plaintiff's FMLA leave and acknowledging his return-to-work date of February 16, 2024.

22. In accordance with his doctor's release and Defendant's FMLA designation, Plaintiff reported to work at the Central facility on Friday, February 16, 2024, and clocked in at 5:22:23 AM, fully intending and prepared to resume his duties.

23. Instead of reinstating Plaintiff as required by law, Defendant refused to allow Plaintiff to work.

24. Later that same day, February 16, 2024, at 15:39 EST, Defendant's Director Daphne Stewart signed a second Mandatory EAP directive. This directive explicitly barred Plaintiff from the workplace, stating, "You should not return to School District property without specific written permission to do so."

25. This written order constituted an indefinite suspension and an illegal denial of Plaintiff's FMLA reinstatement rights.

26. Monday, February 19, 2024, was a school holiday. On Tuesday, February 20, 2024, Plaintiff, expecting to work, was instead "Hand Delivered" the Mandatory EAP paperwork that had been drawn up on February 16, 2024, which he was required to sign for.

27. The order barring Plaintiff from all School District property was never rescinded in writing by Defendant.

28. On March 7, 2024, Defendant wrongfully terminated Plaintiff's employment.

29. The reason given for the termination was the knowingly false and pretextual claim that Plaintiff had effected a "voluntary termination" by being absent for three (3) consecutive days because his "leave of absence expired 02/16/2024" and "you have not returned to work."

30. This stated reason for termination is a lie. Defendant's own records and admissions prove it is a lie.

31. In its formal "Response to EEOC" dated December 10, 2024, Defendant explicitly admits that Plaintiff "reported to work at the Central facility and clocked in at 5:22:23 AM" on Friday, February 16, 2024.

32. In the same EEOC Response, Defendant further lied to a federal agency by stating, "However, (Plaintiff) did not return to work despite submitting the signed return to work form nor did he call the (Defendant) for further instructions as requested."

33. Defendant never made any such request for Plaintiff to "call for further instructions." Defendant has produced no evidence—such as phone records, emails, or certified letters—of this alleged request, because it never happened.

34. Furthermore, it was impossible for Plaintiff to "return to work" after February 16, 2024, because Defendant's own written directive of that same date explicitly barred him from returning to any School District property. Plaintiff was abiding by Defendant's direct order.

35. In summary, Defendant wrongfully terminated Plaintiff for allegedly not returning to a job that Defendant itself was simultaneously and expressly forbidding him from returning to, a fact Defendant later lied about to the EEOC to cover up its illegal conduct.

**FIRST CLAIM FOR RELIEF FMLA Interference (29 U.S.C. § 2615(a)(1, 2))**

36. Plaintiff realledges and incorporates paragraphs 1 through 35 as if fully set forth herein.

37. Plaintiff was an "eligible employee" who took approved FMLA leave for a "serious health condition."

38. Upon the conclusion of his leave, Plaintiff was entitled by law to be restored to his former position or an equivalent one. 29 U.S.C. § 2614(a).

39. Plaintiff satisfied his obligation by returning to work on February 16, 2024, the day after his certified leave period ended.

40. Defendant interfered with, restrained, and denied Plaintiff's substantive right to reinstatement by refusing to allow him to perform his job, imposing new and unlawful conditions on his return (the second EAP mandate), and explicitly barring him from all District property. Thus Defendant's actions were willful and malicious.

41. An employer interferes with FMLA rights when it terminates an employee despite the employee providing proper certification to return to work. *See Parsley v. City of Columbus*, 471 F. Supp. 2d 858 (S.D. Ohio 2006).

42. Furthermore, any ambiguity in leave administration must be construed in the manner most beneficial to the employee, which includes the right to reinstatement upon return. *See Thom v. American Standard, Inc.*, 562 F. Supp. 2d 949 (N.D. Ohio 2008).

43. As a direct and proximate result of Defendant's FMLA interference, Plaintiff has suffered lost wages, employment benefits, and other economic and non-economic damages.

**SECOND CLAIM FOR RELIEF FMLA Retaliation (29 U.S.C. § 2615(a)(2))**

44. Plaintiff realledges and incorporates paragraphs 1 through 43 as if fully set forth herein.

45. Plaintiff engaged in statutorily protected activity by requesting and taking FMLA leave.

46. Defendant subjected Plaintiff to adverse employment actions, including indefinite suspension (barring from property) and termination.

47. A causal connection exists between Plaintiff's protected activity and the adverse actions. This is established by the "near-immediate temporal proximity" between his return from leave on February 16, 2024, and his termination on March 7, 2024.

48. This close timing, combined with Defendant's discredited, false reason for termination, raises a strong inference that Defendant's reason was pretext for unlawful retaliation. *See Sprague v. Ed's Precision Manufacturing, LLC*, No. 20-40342, 2021 U.S. App. LEXIS 20436 (5th Cir. Jul. 9, 2021).

49. An employee can be retaliated against for FMLA use even after the leave period has ended; the protection does not cease the moment leave expires. *See Brooks v. Fast Change Lube & Oil Inc.*, No. 2:21-cv-00438, 2022 U.S. Dist. LEXIS 97416 (S.D.W. Va. May 31, 2022).

50. Defendant's actions were willful, malicious and undertaken with reckless disregard for Plaintiff's FMLA rights.

51. As a direct and proximate result of Defendant's retaliation, Plaintiff has suffered lost wages, benefits, emotional distress, and other damages.

**THIRD CLAIM FOR RELIEF ADA Disability Discrimination (42 U.S.C. § 12112(a))**

52. Plaintiff realledges and incorporates paragraphs 1 through 51 as if fully set forth herein.

53. Plaintiff has a disability as defined by the ADA, 42 U.S.C. § 12102. His diagnosed PTSD is a physical or mental impairment that substantially limits one or more major life activities, including but not limited to, sleeping, concentrating, thinking, and working.

54. Defendant was on notice of Plaintiff's disability as of November 10, 2023, when Plaintiff provided his doctor's diagnosis letter. *See Abler v. Mayor & City Council of*

*Baltimore*, No. 20-cv-3575, 2022 U.S. Dist. LEXIS 48017 (D. Md. Mar. 18, 2022) (defining adequate notice).

55. Plaintiff was a "qualified individual" who, with the reasonable accommodation of a temporary leave of absence, could perform the essential functions of his job.

56. Defendant discriminated against Plaintiff on the basis of his disability by subjecting him to adverse employment actions, including punitive mandatory EAP mandates, suspension, and termination, because of his PTSD diagnosis.

57. An employer's failure to identify an appropriate accommodation for a qualified individual is actionable under the ADA. *See Arndt v. Ford Motor Co.*, 247 F. Supp. 3d 832 (E.D. Mich. 2017).

58. As a direct and proximate result of Defendant's disability discrimination, Plaintiff has suffered lost wages, benefits, emotional distress, and other damages.

**FOURTH CLAIM FOR RELIEF ADA Failure to Accommodate (42 U.S.C. § 12112(b)(5)(A))**

59. Plaintiff realledges and incorporates paragraphs 1 through 58 as if fully set forth herein.

60. Plaintiff requested a reasonable accommodation—a medical leave of absence—for his known disability.

61. Defendant failed to engage in the good-faith, interactive process required by the ADA. *See Courtney-Pope v. Bd. of Educ. of Carroll Cty.*, No. 18-cv-2219, 2019 U.S. Dist. LEXIS 158498 (D. Md. Sep. 17, 2019).

62. Instead of discussing Plaintiff's needs, Defendant offered an unreasonable and punitive alternative—a forced EAP program with a sex therapist and a waiver of his medical privacy rights. This is akin to offering a "battery of unreasonable

accommodations" that an employee is not obliged to accept. *See Goonan v. Fed. Reserve Bank*, 916 F. Supp. 2d 470 (S.D.N.Y. 2013).

63. By failing to provide a reasonable accommodation and by terminating Plaintiff, Defendant violated its duties under the ADA.

64. As a direct and proximate result of Defendant's failure to accommodate, Plaintiff was unable to continue his employment and suffered lost wages, benefits, and other damages.

**FIFTH CLAIM FOR RELIEF ADA Illegal Medical Examination (42 U.S.C. § 12112(d)(4)(A))**

65. Plaintiff realledges and incorporates paragraphs 1 through 64 as if fully set forth herein.

66. The ADA prohibits employers from requiring a medical examination of a current employee unless such examination is shown to be job-related and consistent with business necessity.

67. Defendant's directive that Plaintiff attend Mandatory EAP counseling constituted a mandatory psychological/medical examination. The EAP was designed to probe and explore Plaintiff's mental health. *See Kroll v. White Lake Ambulance Auth.*, 691 F.3d 809 (6th Cir. 2012) (holding that mandatory psychological counseling can constitute a "medical examination").

68. Defendant had no business necessity to order this examination. Plaintiff had already provided sufficient medical documentation from his treating psychiatrist certifying his condition, his need for leave, and his fitness to return.

69. An employer may only require such an exam when it has a reasonable belief, based on objective evidence, that the employee's ability to perform essential job functions is

impaired or they pose a direct threat. *See In the Matter of Williams*, 443 N.J. Super. 532 (App. Div. 2016). Defendant had no such objective evidence.

70. The first mandatory EAP was a same-day mandatory mandate for an unnecessary and illegal medical examination by a psychologist unqualified to diagnose PTSD. Plaintiff had submitted his PTSD diagnosis that same day from his qualified MD Psychiatrist.

71. As a direct and proximate result of Defendant's illegal medical examination demand, Plaintiff was subjected to an invasion of privacy and an unlawful condition of employment that ultimately led to his termination.

**SIXTH CLAIM FOR RELIEF ADA Retaliation (42 U.S.C. § 12203(a))**

72. Plaintiff realleges and incorporates paragraphs 1 through 71 as if fully set forth herein.

73. Plaintiff engaged in protected activity under the ADA by, inter alia, requesting a reasonable accommodation for his disability on November 10, 2023.

74. As a direct result of this protected activity, Defendant took a series of materially adverse actions against him, including imposing mandatory EAP, indefinitely suspending him, and terminating his employment.

75. The causal link between the protected activity and adverse actions is clear from the immediate temporal proximity and Defendant's shifting and pretextual reasons for its actions. *See EEOC Enforcement Guidance on Retaliation and Related Issues*.

76. As a direct and proximate result of Defendant's retaliation, Plaintiff has suffered lost wages, benefits, emotional distress, and other damages.

**SEVENTH CLAIM FOR RELIEF Florida Civil Rights Act – Handicap Discrimination and Retaliation (Fla. Stat. §§ 760.10(1)(a), 760.11(5))**

77. Plaintiff realledges and incorporates paragraphs 1 through 76 as if fully set forth herein.

78. The FCRA makes it an unlawful employment practice for an employer to discharge or otherwise discriminate against an individual because of a handicap.

79. Plaintiff's PTSD is a "handicap" under the FCRA.

80. Defendant's conduct, as described above, constitutes discrimination and retaliation in violation of the FCRA.

81. As a direct and proximate result of Defendant's violations of the FCRA, Plaintiff has suffered lost wages, benefits, mental anguish, loss of dignity, and other intangible injuries, and is entitled to all remedies available under Florida law. *See Wendt v. Universal Prot. Serv., LLC*, No. 23-cv-60980, 2023 U.S. Dist. LEXIS 130310 (S.D. Fla. July 27, 2023) (outlining damages available under FCRA).

**EIGHTH CLAIM FOR RELIEF Violation of Florida's Public Sector Whistle-Blower's Act (Fla. Stat. § 112.3187)**

82. Plaintiff realledges and incorporates paragraphs 1 through 81 as if fully set forth herein.

83. On October 31, 2023, Plaintiff disclosed in a signed, written statement to Defendant information about Defendant's gross mismanagement, negligence and neglect of duty that created a substantial and specific danger to public health and safety, namely, sending drivers on wrong routes that increase accident probability.

84. Within days of this disclosure about the cause of Plaintiff's PTSD Disability, Defendant began a course of retaliatory conduct, culminating in Plaintiff's termination.

85. The adverse actions taken against Plaintiff were potentially partially a direct result of his protected disclosure.

86. As a partial and proximate result of Defendant's violation of the Whistle-Blower's Act, Plaintiff has suffered lost wages and other damages.

**NINTH CLAIM FOR RELIEF Intentional Infliction of Emotional Distress (Florida Common Law)**

87. Plaintiff realledges and incorporates paragraphs 1 through 86 as if fully set forth herein.

88. Defendant's conduct was intentional, malicious, reckless and so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.

89. Specifically, Defendant's conduct of forcing Plaintiff to waive his HIPAA rights, mandating unnecessary and harmful "treatment" from an unqualified EAP therapist, firing him based on a demonstrable lie, and then repeating that lie to a federal agency, all while knowing Plaintiff was suffering from severe PTSD caused by Defendant's own negligence, constitutes extreme and outrageous conduct.

90. The conduct caused Plaintiff to suffer severe emotional distress, beyond what a reasonable person could be expected to endure.

91. As a direct and proximate result of Defendant's outrageous conduct, Plaintiff has suffered and continues to suffer severe emotional distress, mental anguish, and psychological harm.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Petri Carmen respectfully prays that this Court enter judgment against Defendant, The School District of Palm Beach County, and grant the following relief:

A. An award of back pay for lost wages and benefits from February 16, 2024, to the date of judgment;

B. An award of pre-judgment interest on all economic damages;

C. An award of liquidated damages under the FMLA in an amount equal to his back pay and interest, pursuant to 29 U.S.C. § 2617(a)(1)(A)(i, iii);

D. An order of immediate reinstatement to his former or an equivalent position, or, in the alternative, an award of front pay;

E. An award of compensatory damages for past and future mental anguish, emotional distress, pain and suffering, and loss of dignity;

F. An award of punitive damages up to the statutory maximum of $100,000 to $300,000 under the FCRA, pursuant to Fla. Stat. § 760.11(5);

G. An award of damages for all past and future medical expenses related to the treatment of his PTSD;

H. An award of reasonable attorney's fees pursuant to the FMLA (29 U.S.C. § 2617(a)(3)), the ADA (42 U.S.C. § 12205), and the FCRA (Fla. Stat. § 760.11(5));

I. An award of all costs of this action;

J. An order directing Defendant to expunge any and all records of Plaintiff's unlawful termination from his personnel file; and

K. Such other and further relief as this Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: May 29, 2026

Respectfully submitted,

*Petri Carmen*

Petri Carmen
3210 Ridge Hill Rd Apt C
Boynton Beach, FL 33435

(561)562-1719

prcarmen95@gmail.com